

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00495-CV

**IN THE INTEREST OF E.D.**, a Child

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2013-PA-01641
Honorable Richard Garcia, Judge Presiding

Opinion by:  Sandee Bryan Marion, Justice

Sitting:  Sandee Bryan Marion, Justice
Rebeca C. Martinez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  December 17, 2014

AFFIRMED

This is an accelerated appeal from the trial court's judgment terminating appellant's

parental rights to her son, E.D.  On appeal, appellant asserts the evidence is insufficient to support

a finding that termination is in E.D.'s best interest.  We affirm.

### BACKGROUND

Only two witnesses testified at trial: Marissa Ortiz, a Texas Department of Family and

Protective Services ("the Department") supervisor, and Ruth,[1] the child's great-grandmother.

Ortiz testified the Department received conservatorship of E.D. in July 2013 because both

E.D. and appellant tested positive for methamphetamines and opiates at the time of his birth in

---

[1] To protect the identity of the child, we will refer to his great-grandmother by her first name.  *See* TEX. R. APP. P. 9.8(b)(2).

June 2013. Ortiz said appellant admitted smoking methamphetamine throughout her pregnancy, and appellant has not completed everything on her service plan. According to Ortiz, appellant said the child's alleged father also used drugs. When asked if appellant engaged in any form of service, Ortiz said appellant engaged in an intake for her individual therapy. Part of appellant's service plan required her to engage in drug treatment, which she has not done. By the time of trial, which occurred on June 26, 2014, appellant had visited with her son only twice, once in November 2013 and once in February 2014.

Ortiz testified E.D. is currently with Ruth, his maternal great-grandmother, who wishes to adopt him, and he is "doing wonderful" with her. Ortiz believed termination was in the child's best interest because neither parent had demonstrated they could provide a safe and stable home free from drugs, criminal activity, and domestic violence; or that they are able to maintain their own mental health care in a manner that would be protective and safe for E.D.

On cross-examination, Ortiz admitted she supervised E.D.'s caseworker and her knowledge of the case came, not from personal knowledge, but from her review of the Department's records. Ortiz said she had not personally spoken to appellant, but she knew appellant had tried to contact the caseworker, and they met face-to-face a week before trial because the caseworker was present when the police were called to remove appellant from Ruth's residence. Ortiz said that prior to this event, the caseworker had other contact with appellant where appellant expressed a desire to do some of her services. Ortiz was aware of appellant's history of mental health issues, and the Department referred appellant for individual counseling. However, Ortiz said appellant was not seeing a doctor. Ortiz did not know about the "romantic status" of appellant and the child's alleged father, although she knew they were living on the same property. Neither parent has paid child support.

Ruth testified she began caring for E.D. while he was still in the hospital following his birth, visiting daily to feed him. She was aware of appellant's drug use, and she tried to help appellant by placing her in drug treatment programs. Ruth said, however, appellant continues to use drugs. Ruth testified about the incident when the police were called to her home about two or three weeks before trial. She said appellant came to her house, "was all messed up, banging on my door, trying to come in." She said appellant weighed eighty-five to ninety pounds. Appellant had brought another woman with her "to back her up," and this woman was behind Ruth's house. Ruth called the caseworker, who arrived "in a heartbeat," and made the women leave. Ruth said appellant and the other woman "took off running, back to [appellant's] mother."[2]

The next day, appellant again appeared at Ruth's house, banging on the door. Ruth called 911, and the police, "seeing that she was all messed [up], put her in the car" and took her to the hospital. After about four days in the hospital, appellant went back to the alleged father and resumed taking drugs with him.

Ruth said she recently received two calls from appellant who was confused about her court date. Ruth said she told appellant the date of trial, but appellant "was out there on a limb, not listening to me. She talks in riddles because of the drugs."[3] Ruth also stated appellant has schizophrenia, bipolar disorder and has ADHD. Ruth said appellant has seen doctors and taken medication in the past, but was no longer doing either. Ruth said appellant has been hospitalized several times for mental issues. According to Ruth, appellant and the child's father are living together, and she has asked appellant to leave him, but appellant says she never will.

---

[2] Ruth also adopted appellant's brother and two sisters in 2008, but she was unable to adopt appellant because appellant's mother's parental rights had not been terminated. Ruth testified appellant's mother also uses drugs.

[3] Appellant was not present at trial.

**BEST INTEREST**

A trial court may order termination of the parent-child relationship only if the court finds by clear and convincing evidence one or more statutory grounds for termination and that termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001(1), (2) (West 2014); § 161.206(a). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007. We review the sufficiency of the evidence to support the termination of parental rights under the well-established standards for legal and factual sufficiency of the evidence. *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, when the court considers factors related to the best interest of the child, "the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." TEX. FAM. CODE § 263.307(a). In determining whether a child's parent is willing and able to provide the child with a safe environment, the court should consider: (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the Department or other agency; (5) whether the child is fearful of living or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's

family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. *Id.* § 263.307(b).

Courts also may apply the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.*

Finally, evidence that proves one or more statutory grounds for termination may constitute evidence illustrating that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002) (holding same evidence may be probative of both section 161.001(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest). A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.–San Antonio 2013, pet. denied). A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest. *Id.*

We conclude there is legally and factually sufficient evidence to support the trial court's best-interest finding. Appellant has a history of substance abuse and continues to associate with people who also use drugs. Despite efforts to assist appellant in overcoming her drug use, the evidence established the drug use continued until shortly before trial commenced. Also, despite efforts to assist her with her mental health, appellant has not taken the steps necessary to deal with her mental health issues. Although we do not examine the sufficiency of the evidence in support of the statutory grounds for termination, we note that appellant's parental rights were terminated, in part, because she engaged in conduct that endangered E.D.'s physical or emotional well-being; she constructively abandoned E.D.; and she failed to comply with provisions of her service plan. Finally, Ruth has demonstrated a desire to care for E.D. from the moment of his birth, and the child is doing well with her.

On this record, we overrule appellant's issue on appeal and affirm the trial court's judgment.

Sandee Bryan Marion, Justice